IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GERALD L BATES,

      Plaintiff,

v.                                    CASE NO. 4:09-cv-00026-SPM-GRJ

DIANE ANDREWS, et al,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate serving a life sentence in the custody of the Florida Department of Corrections, initiated this case by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983.  Plaintiff is proceeding pursuant to a third amended complaint (Doc. 20).   The case is presently before the Court on Doc. 45, Defendants' motion to dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).  Doc. 45.  Plaintiff filed a response in opposition to the motion to dismiss, Doc. 50, and therefore this matter is ripe for review.  For the following reasons, the undersigned recommends that the motion to dismiss be granted in part and denied in part.

## I.  BACKGROUND

According to the allegations of the third amended complaint, in December 2006 Plaintiff was transferred to Wakulla Correctional Institution so that he could participate in a faith/character based program offered at that facility.  In August 2007, he was assigned to work as an inmate law clerk under the supervision of Defendant Elaine

Gionet.  Plaintiff alleges that his relationship with Gionet became "strained" because

Plaintiff assisted other inmates in filing grievances concerning alleged deficiencies in

library services.  Plaintiff alleges that between July 2008 and October 2008, Gionet

initiated disciplinary actions against several inmates for filing grievances.

In April 2008, the "West Florida DVD" system was adopted as the primary legal

research tool at the prison, and new computers were installed in the library.  Some of

the new research tools were installed and made available immediately, but in June

2008 an installation error rendered the library's legal collection "seriously deficient."

Plaintiff alleges that he brought the error and resulting deficiencies to Gionet's attention,

but she took no action.  Plaintiff and other inmate law clerks complained verbally, and

Gionet threatened reassignment if the complaints did not stop.

On October 13, 2008, Plaintiff filed a grievance concerning Gionet's failure to

remedy the law library deficiencies.  On October 17, 2008, while Plaintiff was on duty in

the law library, he and another inmate law clerk were ordered to report to the officer-in-

charge.  The inmates were placed in restraints and taken to disciplinary confinement.  A

classification supervisor informed Plaintiff that Gionet had contacted Assistant Warden

Diane Andrews and reported that Plaintiff and the other law clerk entered her office and

became aggressive.  Plaintiff filed an inmate request seeking an investigation into

possible retaliation and filed grievances of reprisal.  A non-prisoner friend of Plaintiff's,

Lori Blocker, sent an email complaint to the Secretary of the Department of Corrections.

Plaintiff was interviewed by Corrections Officer Capers, and Plaintiff told Capers

that he was being subjected to retaliation by Gionet.  Plaintiff asked Capers to review

his October 13 grievance, and to examine the library security camera, which Plaintiff

alleged would prove that he did not enter Gionet's office.  Capers allegedly stated that "he did not give a f--- that Gionet's report was false, that this was how they got rid of grievance writers at Wakulla and that his job was to back his fellow staff."  According to Plaintiff, Capers told him to stop Ms. Blocker's complaints, "or they would bury [Plaintiff]."

Corrections Officer Nichols delivered a formal disciplinary report ("DR") to Plaintiff charging him with making "spoken threats."  According to the "statement of facts" in the charging report (appended to Plaintiff's third amended complaint), Gionet alleged that Plaintiff approached her in her office regarding "Premise C.D.'s," and Plaintiff told Gionet that she "should put pressure on the warden to gain access to such software."  Gionet alleged that she told Plaintiff to utilize the proper channels to request the software.  According to Gionet's statement, Plaintiff then said that he had "contacts on the outside who relay my complaints about you and this library to the Department of Corrections General Counsel's office and the Secretary's office."  Gionet alleged that "this statement was made in such a way that I felt as if [Plaintiff] was directly threatening my job."

On October 23, 2008, Ms. Blocker sent an email to the Secretary, with a copy to Warden Russell Hosford, complaining of retaliation against Plaintiff.  On October 24, 2008, Plaintiff was shackled and escorted to Assistant Warden Andrews' office for a meeting.  Plaintiff alleges that Andrews stated that she approved his confinement and DR after receiving the call from Gionet.  Plaintiff alleges that Andrews stated that "she did not care if the DR was false and that she was tired of all of [Plaintiff's] grievances and complaints, that it was time for him to leave Wakulla C.I., that she had ordered that

[Plaintiff] be taken to DR court, found guilty, and receive the maximum penalty, which would ensure his transfer away from Wakulla C.I."   Plaintiff further alleges that Andrews "ordered [Plaintiff] to stop further complaints by Ms. Blocker, or if it was the last thing she did she would see [Plaintiff] stripped of his law clerk certification."

On October 30, 2008, Classification Specialist Vargas and C.O. Capers conducted a DR hearing.  Plaintiff pleaded not guilty and stated that the library security camera tapes would show that he did not enter Gionet's office.  He stated that he did not make a statement to Gionet concerning the Premise C.D.'s, and that he believed he was being subjected to a retaliatory DR.  Vargas and Capers denied his request for staff witnesses, read two inmate witness statements, and found Plaintiff guilty of making a spoken threat to Gionet.  Plaintiff was sanctioned with the loss of 90 days of gain time and 30 days of disciplinary confinement.  He was transferred to another DOC institution.[1]

Plaintiff pursued an administrative appeal from the disciplinary conviction.  While the appeal was pending, Ms. Blocker sent emails to Warden Hosford and the Governor concerning, *inter alia*, Plaintiff's DR.  On January 5, 2009, Warden Hosford denied Plaintiff's DR appeal.  The Bureau of Inmate Grievance Appeals denied relief on February 6, 2009.

Plaintiff filed a petition for a writ of mandamus in the Leon County Circuit Court.  *See Bates v. McNeil*, Case No. 2009 CA 000858, slip op. (Fla. 2nd Cir. Ct. 3/29/10).

---

[1]Plaintiff is currently incarcerated in the State of Virginia, pursuant to a hardship transfer under the Interstate Corrections Compact, due to a family member's illness. Docs. 41, 42.

The state court denied relief, noting that it was exercising its authority to review administrative agency rulings in an appellate capacity.[2]   The state court determined that Plaintiff's disciplinary conviction satisfied the procedural due process requirements of *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974), and that Plaintiff's conviction was supported by "some evidence" in the form of Ms. Gionet's statement, in accordance with *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454-55 (1985).   Reviewing the disciplinary record in its appellate capacity, the state court rejected Plaintiff's claim that the DR was false and initiated with retaliatory intent.  *Bates*, Case No. 2009 CA 000858, slip op. at 5.  Plaintiff's appeal to the District Court of Appeal was dismissed. *See id*. dkt. entry 10/1/10.

Plaintiff enumerates twelve claims for relief in the instant complaint.  Plaintiff's claims numbered two, four, six, seven, eight, nine, and eleven allege violations of his 14th Amendment right to due process in connection with the disciplinary proceedings. As explained more fully below, Plaintiff's due process claims are not cognizable under § 1983 and it is unnecessary to set forth his allegations in detail.

Plaintiff's claims numbered one, three, five, ten, and twelve allege violations of Plaintiff's First Amendment rights.  In Claim One, Plaintiff alleges that Gionet's "false" DR was made in retaliation for Plaintiff's filing of a grievance concerning the law library and Gionet's failure to rectify problems with the legal software.   In Claim Three, Plaintiff alleges that Capers' expression of retaliatory intent during the disciplinary proceeding violated his First Amendment rights.  In Claim Five, Plaintiff alleges that Andrews'

---

[2]A copy of the Circuit Court's order denying mandamus relief is appended to the Defendants' motion to dismiss.  Doc. 45-2.

expressions of retaliatory intent during the disciplinary proceeding violated his First Amendment rights.  In Claim Ten, Plaintiff alleges that Vargas and Capers violated his First Amendment rights by punishing him for the statement that he had "contacts on the outside who relay my complaints about you and this library to the Department of Corrections General Counsel's office and Secretary's office."   In Claim Twelve, Plaintiff alleges that Hosford violated his First Amendment rights by sustaining his disciplinary conviction for making the alleged statement to Gionet.  Plaintiff seeks declaratory relief, "nominal compensatory damages," and punitive damages.

## II. DEFENDANTS' MOTION TO DISMISS

Defendants initially contend that the Court should abstain from reviewing Plaintiff's due process claims during the pendency of Plaintiff's state-court appeal, pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny.  As noted above, Plaintiff's state-court appeal was dismissed during the pendency of Defendants' motion to dismiss.  Because the state court proceedings have concluded, there is no pending state action.  Therefore, Defendants' argument that the Court should abstain is moot.

Defendants contend that dismissal of the third amended complaint is warranted on the following grounds: (1) Plaintiff failed to exhaust any claims against Hosford, and failed to exhaust his claim that Andrews threatened to strip him of his law clerk certification; (2) Plaintiff's Fourteenth Amendment due process claims are not cognizable because he is not eligible to apply gain time to his habitual-offender life sentence and therefore does not have a protected liberty interest in the loss of gain time, and the other disciplinary sanctions do not impinge upon a protected liberty interest; (3) Plaintiff has failed to establish that Defendant Gionet violated his First

Amendment rights by retaliating against him for filing a grievance; (4) Plaintiff's claims

for damages for mental or emotional injury are barred by 42 U.S.C. § 1997e(e); and (5)

Defendants are immune from suit for monetary damages in their official capacity.  Doc.

45.

### III.  STANDARD OF REVIEW

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that

"[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition

with a high mortality rate."  *Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv.*, 400

F.2d 465, 471 (5th Cir. 1968).  For the purposes of a motion to dismiss, the Court must

view the allegations of the complaint in the light most favorable to plaintiff, consider the

allegations of the complaint as true, and accept all reasonable inferences therefrom.

*See, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir.1994).

Furthermore, the Court must limit its consideration to the complaint and written

instruments attached as exhibits.  Fed R. Civ. P. 10(c); *GSW, Inc. v. Long County, Ga.*,

999 F.2d 1508, 1510 (11th Cir.1993).

In *Ashcroft v. Iqbal*, .  ___U.S. ___, 129 S.Ct. 1937, 1950 (2009), the Supreme

Court articulated a two-pronged approach for evaluating a motion to dismiss under Rule

12(b)(6): The court must first determine what factual allegations in the complaint are

entitled to a presumption of veracity, and then assess whether these facts give rise to

an entitlement for relief.  In determining whether factual allegations are entitled to the

presumption of truth, the Court stated that it was not whether the facts are "unrealistic

or nonsensical" or even "extravagantly fanciful," but rather it is their conclusory nature

that "disentitles them to the presumption of truth."  *Iqbal*, 129 S.Ct. at 1951. Once a

claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  "While the pleadings of *pro se* litigants are 'liberally construed,' they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. Saint Lucie County School Bd.,* 2010 WL 3995824, **1 (11th Cir. 2010) (unpublished) (citations omitted) (applying pleading standards of *Iqbal* and *Twombly* to *pro se* complaint).[3]

## IV. DISCUSSION

### (1) Exhaustion of Administrative Remedies

Defendants contend that Plaintiff failed to exhaust administrative remedies as to all of his claims against Hosford, and failed to exhaust a specific claim against Andrews.[4]  As support, Defendants point to the administrative remedy documents that Plaintiff appended to the third amended complaint.  In response to the motion to dismiss, Plaintiff conclusionally alleges that he "properly exhausted" each of the First Amendment claims presented in his first, third, fifth, tenth, and twelfth claims for relief.

---

[3] Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

[4]The Prison Litigation Reform Act (PLRA) provides that:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Doc. 50.

With respect to Defendant Hosford, a review of the administrative remedy documents appended to the complaint shows that Plaintiff did not present any claims against Warden Hosford in the administrative remedy process.  *See* Doc. 20 at 18-36. Accordingly, Plaintiff's claims against Warden Hosford, including all due process claims and the First Amendment claim alleged in Plaintiff's claim number twelve, are due to be dismissed for failure to exhaust administrative remedies.

Defendants argue that Plaintiff failed to exhaust his specific claim that Andrews threatened to strip him of his law clerk certification in retaliation for filing grievances.  In a supplement to his DR appeal at the institutional level, Plaintiff alleged that Assistant Warden Andrews approved the DR action sought by Gionet, and that such DR action was "motivated/retaliation as a direct result of my good faith participation in the grievance process."  Doc. 20 at 32.  Plaintiff complained that Andrews exercised "undue influence" over the DR process, that Andrews' involvement in the process had a "prejudicial effect on the total outcome of the DR action as it removed the air of impartiality from the DR team," and that Andrews' involvement resulted in a more severe penalty.  *Id*.  In his administrative appeal to the DOC Secretary, Plaintiff specifically complained that Andrews told him "she would be sure I was found guilty and receive the maximum penalty including pulling of law clerk certification and transfer." *Id*. at 45.   These allegations are sufficient to have put Defendant Andrews on notice of the claims in the instant complaint, and such claims should not be dismissed for failure to exhaust.

(2) <u>Due Process</u>

The Supreme Court has held that when a prison disciplinary proceeding may
result in the loss of time credits, a prisoner is entitled to the following three procedural
protections: (1) advance written notice of the charges and at least 24 hours to prepare a
defense; (2) an opportunity, consistent with institutional safety and correctional goals, to
call witnesses and present documentary evidence in his own behalf; and (3) a written
statement by the factfinder of the evidence relied upon and the reasons for the
disciplinary action.  *Wolff*, 418 U.S. at 563-66.  Due process standards are satisfied if
the findings of the disciplinary officer are supported by "some evidence."  *Hill*, 472 U.S.
at 455.

In this case, the "loss" of gain time imposed as a disciplinary sanction does not
give rise to a procedural due process claim.  Plaintiff does not dispute that he is serving
a life sentence as a habitual offender.  "[U]nder a life sentence, he cannot earn gain
time, no matter how exemplary his conduct may be while incarcerated." *Tal-Mason v.
State*, 700 So.2d 453, 455 (Fla. 4th DCA 1997), citing Fla. Stat. § 944.275(3)(a);
*Burdick v. State*, 584 So.2d 1035, 1038-39 (Fla. 1st DCA 1991) (prisoner serving life
term could accumulate incentive gain time "on paper," which would only be credited if
the life sentence were commuted to a term of years, after service of the minimum
mandatory term), *approved in part and quashed in part (other grounds)*, 594 So.2d 267
(Fla.1992).  For such inmates, DOC procedures provide that:

> Even though by definition inmates serving a life term, certain
> mandatory sentences or death sentences cannot earn or
> lose gain time, the team is authorized to recommend loss of
> gain time for these inmates for two reasons: first, this is an
> indication of the seriousness of the disciplinary action and

second, it may be applicable if the life or death sentence is
eventually converted to a term of years.

Fla. Admin. Code 33-601.308(4)(m).

Because Plaintiff cannot "earn" gain time, the "loss" of gain time in this case has

no possibility of increasing the duration of his confinement, and therefore he has no due

process liberty interest in that particular disciplinary sanction.  *See Osterback v. Crosby*,

2004 WL 964139 *4 (M.D. Fla. 3/25/04) (rejecting claim that loss of gain time "on paper"

created due process liberty interest, and noting that possibility that inmate could benefit

from gain time if sentence were commuted to term of years was "too speculative" to give

rise to a protected liberty interest) (citing *Conlogue v. Shinbaum*, 949 F.2d 378, 380

(11th Cir.1991) (no liberty interest arose from possibility of discretionary grant of

incentive good time); *Cook v. Wiley*, 208 F.3d 1314, 1323 (11th Cir.2000) (possibility of

discretionary grant of sentence reduction did not create a constitutionally protected

liberty interest); *Venegas v. Henman*, 126 F.3d 760, 764 (5th Cir.1997) ("loss of the

mere opportunity to be considered for discretionary early release is too speculative to

constitute a deprivation of a constitutionally protected liberty interest").

Defendants argue that the other disciplinary sanctions imposed on Plaintiff also

do not give rise to due process protections.  The Supreme Court has stated that there

are two circumstances in which a prisoner can be deprived of a liberty interest beyond

the deprivation associated with the prisoner's confinement. *See Sandin v. Conner*, 515

U.S. 472, 484 (1995).  First, a liberty interest may arise from the "Due Process Clause of

its own face," which extends procedural safeguards to a prisoner when his liberty is

restrained in a way that exceeds the sentence imposed by the court. *Id.* Second, states

may create liberty interests by conferring certain benefits upon prisoners, the deprivation of which "impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*"* *Id.*

In *Sandin*,  the Supreme Court held that there was no state-created liberty interest in being  free from disciplinary confinement for 30 days because such confinement did not present an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484.  The Court made this finding after it compared the evidence of the treatment of inmates in disciplinary and administrative segregation and found that the conditions in the one "mirrored those conditions" in the other.  *Id.* at 486.  In this case, Plaintiff makes no allegation that his confinement in disciplinary segregation at Wakulla amounted to an "atypical and significant hardship."

With respect to Plaintiff's due process claim based on his transfer from an institution with faith/character-based programming, it is clear that the Due Process Clause does not confer, nor has the State created, a federal constitutional right for inmates to participate in rehabilitative or recreational prison programs.  *See McKune v. Lile*, 536 U.S. 24, 39 (2002) (inmate's transfer to another facility does not implicate a liberty interest, even if it results in the loss of access to vocational, educational, recreational, and rehabilitative programs); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (no due process protections required for loss of eligibility to participate in prison rehabilitative programs).  Because Plaintiff had no liberty interest in remaining in the faith/character-based program offered at Wakulla, his allegation that he was denied due process in connection with his transfer provides no basis for relief.

For these reasons, the Plaintiff has failed to state any cognizable claims for procedural due process violations, and therefore Defendants' motion to dismiss those claims (enumerated as claims two, four, six, seven, eight, nine, and eleven) should be granted.[5]

### (3) First Amendment Claims Against Gionet[6]

"It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement."   *Smith v. Mosley*  532 F.3d 1270, 1276 (11th Cir. 2008) (citing *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir.2003)).   "It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints."  *Id*.   "To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech."  *Id*. (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir.2005)).

The third element, causal connection, "asks whether the defendants were

---

[5] Plaintiff concedes that if his due process claims are dismissed, then Defendant Nichols should be dismissed because no other claims are asserted against him.  Doc. 50.

[6] The third amended complaint also alleges First Amendment claims against Defendants Capers, Andrews, and Vargas, in Plaintiff's claims enumerated three, five, and ten.  *See* Doc. 20.  Defendants' motion to dismiss does not address those First Amendment claims, and therefore they will not be discussed.

subjectively motivated to discipline because [Plaintiff] complained of some of the conditions of his confinement."  *Smith*, 532 F.3d at 1278 ((citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999)).  Subjective motivation is evaluated under a burden-shifting standard under which the Plaintiff initially bears the burden of establishing that his protected conduct was a motivating factor behind the alleged harm.  *Id*.  "'If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on [his motion for judgment as a matter of law or prior to trial on] summary judgment.'"  *Id. (*quoting *Thaddeus-X*, 175 F.3d at 399).

Defendants do not contend that Plaintiff has failed to state a claim for relief on the first two elements of his retaliation claim.  Defendants' motion to dismiss focuses on the causation element.  *See* Doc. 45 at 20-23.  Defendants assert that Plaintiff cannot maintain a cause of action for retaliation because he was, in fact, found guilty of the disciplinary infraction and the DR has not been overturned.  According to Defendants, "[s]ince an inmate is presumed to have committed an act he was not entitled to perform if the DR has not been overturned, there is simply no constitutional wrong to address in a section 1983 action claiming a false and retaliatory DR if the DR is not first overturned. In other words, the adjudication of guilt for violating a prison rule undercuts any allegation that the DR was an improper retaliatory action and gives the DR the imprimatur of a proper penological response.  This is so because any possible causal connection between a protected activity and the harm . . . is severed since the harm is not in reaction to any protected activity, but directly due to an improper activity."  Doc. 45.

Defendants' argument misconstrues the relevant causation inquiry, which is not

satisfied merely by showing that the prisoner was, in fact, found guilty of the disciplinary infraction. *See, e.g., Smith,* 532 F.3d at 1278.  In *Smith*, the prisoner-plaintiff was charged with two disciplinary offenses: making false statements to a DOC employee and insubordination.  Both charges arose from a letter the plaintiff sent to the warden that also included legitimate complaints about prison conditions.  The plaintiff pleaded guilty to one charge, and was found guilty following a hearing on the other charge.   In evaluating whether the district court properly granted summary judgment to the defendants on plaintiff's subsequent § 1983 retaliation claim, the Eleventh Circuit did not find that plaintiff's convictions were conclusive. *See id*.  Rather, the Court examined the summary judgment evidence under the burden-shifting standard outlined above and determined that "[o]bjective prison administrators standing in [the defendants'] shoes" would have disciplined the plaintiff even in the absence of the protected conduct. *Id*. at 1278-79.

Defendant argues that Plaintiff's claim is foreclosed because his DR has not been overturned, but such a requirement is contrary to the Supreme Court's holding in *Muhammad v. Close*, 540 U.S. 749 (2004).  *Muhammad* concerned a § 1983 damages case alleging retaliation in connection with a prison disciplinary case in which the prisoner did not lose good time credits.  The Sixth Circuit affirmed summary judgment for the defendant because the prisoner had not shown that he had obtained a termination in his favor of the underlying disciplinary case.   The Supreme Court reversed, and in doing so resolved a split in the Circuits concerning whether the "favorable termination" rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), applies to prison disciplinary proceedings "in the absence of any implication going to the fact or duration of [the] underlying sentence."

*Muhammad*, 540 U.S. at 753-54.

The Court explained that *Heck* held that "where success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad*, 540 U.S. at 751 (citing *Heck*).  In *Edwards v. Balisok*, 520 U.S. 641 (1997), the *Heck* "favorable termination" rule was applied in the context of a § 1983 claim for damages stemming from a prison disciplinary case where the disciplinary action "could affect credits toward release based on good time served."  *Id*. (citing *Balisok*).  The Court explained that in such cases "conditioning the right to bring a § 1983 action on a favorable result in state litigation or federal habeas served the practical objective of preserving limitations on the availability of habeas remedies."  *Id*.

The Court made clear that *Heck's* favorable termination rule does not apply categorically to all suits challenging disciplinary proceedings:  "*Heck's* requirement to resort to state litigation and federal habeas before § 1983 is not, however, implicated by a prisoner's challenge that *threatens no consequences for his conviction or the duration of his sentence*."  *Id*. (emphasis added).  Further, the Court stated that the "assumption is that the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules."  *Id*. n. 1.  In a case such as the one presented in *Muhammad*, where the Plaintiff "raised no claim on which habeas relief could have been granted on any recognized theory," there was no basis for requiring favorable termination of the underlying disciplinary case before Plaintiff could proceed under § 1983.  *Id*.

As noted above, because Plaintiff's disciplinary conviction did not implicate the duration of Plaintiff's confinement –  for the simple reason that Plaintiff is serving a life sentence –  none of the claims asserted in the instant complaint present any cognizable basis for granting habeas relief.[7]  Therefore, in light of *Muhammad*, Defendants are not entitled to dismissal of Plaintiff's First Amendment retaliation claims on the basis that Plaintiff's underlying disciplinary conviction has not been overturned.

The undersigned concludes that Plaintiff's third amended complaint adequately alleges facts that are, at this stage, entitled to a presumption of veracity and from which it may be inferred that Defendant Gionet was subjectively motivated to discipline Plaintiff because of his complaints about the prison law library.  *See Smith*, 532 F.3d at 1278. Whether Plaintiff can ultimately produce evidence in support of his claim that is sufficient to shift the burden of proof to Defendants will depend upon further development of this case.  In the current procedural posture, however, Defendants are not entitled to dismissal of Plaintiff's First Amendment retaliation claim for failure to state a claim upon which relief may be granted.

### (4) Compensatory and Punitive Damages

Defendants contend that Plaintiff's claims for compensatory and punitive damages are barred by the PLRA, in the absence of a physical injury.  The PLRA provides that a prisoner may not bring a federal civil action "for mental or emotional

---

[7] For this same reason, although Plaintiff sought appellate review of his disciplinary convictions in the state court, he was not required to do so because the exhaustion requirements of 28 U.S.C § 2254 are inapplicable, *see Muhammad*, 540 U.S. at 751-52, and it therefore follows that this Court is not constrained by the § 2254(d) limitation on federal review of state court decisions.

injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. §
1997(e); *Smith v. Allen* 502 F.3d 1255, 1271 (11th Cir. 2007) (citing *Napier v. Preslicka*,
314 F.3d 528, 532 (11th Cir.2002)).  The PLRA does not preclude an award of nominal
damages if a plaintiff establishes the violation of a constitutional right.  *Smith*, 502 F.3d
at 1271 (citing *Carey v. Piphus*, 435 U.S. 247, 255 (1978)). In *Smith*, the Court held that
a prisoner who alleged violations of the Religious Land Use and Institutionalized
Persons Act due to the burden placed upon his religious exercise, but no physical harm,
was limited by the PLRA to seeking only nominal damages (in addition to injunctive
relief).  In this case, Plaintiff has alleged no physical injury in connection with his
retaliation claims, and he is therefore barred by the PLRA from seeking compensatory
and punitive damages.  *See id.*  Defendants' motion to dismiss Plaintiff's claim for
damages, other than nominal damages, should be granted.

## (5) Official Capacity Claims

An official capacity claim is, in all respects other than name, to be treated as a
claim against the entity of which the defendant is an agent. *See Kentucky v. Graham*,
473 U.S. 159, 166 (1985).  To prevail under § 1983 against that entity, a plaintiff must
show that the entity itself was the "moving force" behind his constitutional deprivation;
and the only way to do that is to identify a "policy or custom [of the entity that] played a
part in the violation of federal law."  *Id*.  In the instant case, Plaintiff has not identified a
policy or custom of the DOC that played a part in Defendants' alleged retaliation.
Moreover, the Eleventh Amendment bars his claims for monetary damages against
Defendants in their official capacities. Therefore, Defendants are entitled to dismissal to

the extent they are sued in their official capacities.

## VI.  CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants'

motion to dismiss (Doc. 45) be **GRANTED IN PART** to the extent that:

(1) Plaintiff's claims against Defendants Nichols and Hosford be **DISMISSED**;

(2) Plaintiff's Fourteenth Amendment due process claims be **DISMISSED**;

(3) Plaintiff's claims for compensatory and punitive damages against Defendants in their individual capacities be **DISMISSED**; and

(4)  Plaintiff's claims against Defendants in their officials capacities be **DISMISSED;**

and that in all other respects, Defendants's motion to dismiss (Doc. 45) be **DENIED.**  It is

further **RECOMMENDED** that this case be remanded to the undersigned for further

proceedings.

**IN CHAMBERS** this 24th day of March 2011.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**