IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GERALD L BATES,

    Plaintiff,

v.                                                CASE NO. 4:09-cv-00026-SPM-GRJ

DIANE ANDREWS, et al,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate serving a life sentence in the custody of the Florida Department of Corrections, initiated this case by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983. Plaintiff is proceeding pursuant to a third amended complaint (Doc. 20). The case is presently before the Court on Doc. 68, Defendants' second motion to dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff filed a response in opposition to the motion to dismiss, Doc. 72, and therefore this matter is ripe for review. For the following reasons, the undersigned recommends that the motion to dismiss be granted, and that judgment be entered in Defendants' favor.

### I. BACKGROUND

The allegations of the complaint were recounted in detail in the undersigned's recommendation regarding Defendant's first motion to dismiss. *See* Doc. 61. To summarize, in August 2007, while confined at Wakulla Correctional Institution, Plaintiff was assigned to work as an inmate law clerk under the supervision of Defendant Elaine

Gionet.  Plaintiff alleges that his relationship with Gionet became "strained" because Plaintiff assisted other inmates in filing grievances concerning alleged deficiencies in library services.  Plaintiff alleges that between July 2008 and October 2008, Gionet initiated disciplinary actions against several inmates for filing grievances.

Plaintiff and other inmates complained to Gionet about deficiencies in the law library with respect to new computer research tools.  Plaintiff filed a grievance concerning Gionet's failure to remedy the deficiencies.  Plaintiff alleges that shortly afterward he and another inmate law clerk were placed in disciplinary confinement.  Plaintiff was informed that Gionet had reported that Plaintiff and another inmate had become aggressive in her office.  Plaintiff filed grievances alleging reprisal and retaliation, and a non-prisoner friend of Plaintiff's, Lori Blocker, sent an email complaint to the Secretary of the DOC.

Plaintiff alleges that he told Corrections Officer Capers that he was being subjected to retaliation by Gionet.  Capers allegedly stated that "he did not give a f--- that Gionet's report was false, that this was how they got rid of grievance writers at Wakulla and that his job was to back his fellow staff."  According to Plaintiff, Capers told him to stop Ms. Blocker's complaints, "or they would bury [Plaintiff]."

Plaintiff was served with a disciplinary report ("DR") charging him with making "spoken threats."  According to the "statement of facts" in the charging report (appended to Plaintiff's third amended complaint), Gionet alleged that Plaintiff approached her in her office regarding research software, and Plaintiff told Gionet that she "should put pressure on the warden to gain access to such software."  Gionet alleged that she told Plaintiff to utilize the proper channels to request the software.

According to Gionet's statement, Plaintiff then said that he had "contacts on the outside who relay my complaints about you and this library to the Department of Corrections General Counsel's office and the Secretary's office." Gionet alleged that "this statement was made in such a way that I felt as if [Plaintiff] was directly threatening my job."

Ms. Blocker sent an email to the Secretary, with a copy to Warden Russell Hosford, complaining of retaliation against Plaintiff. Plaintiff alleges that Assistant Warden Andrews told him in a meeting that she approved his confinement and DR after receiving the report from Gionet, that she did not care if the DR was false because she was tired of Plaintiff's grievances, and that she wished to secure Plaintiff's transfer out of Wakulla. Plaintiff further alleges that Andrews ordered him to stop Blocker's complaints.

Classification Specialist Vargas and C.O. Capers conducted a DR hearing. Plaintiff pleaded not guilty and denied making the statement to Gionet. Plaintiff was found guilty of making a spoken threat to Gionet on the basis of her statement, and he was sanctioned with the loss of gain time and disciplinary confinement. Plaintiff was transferred to another DOC institution.[1]

Plaintiff unsuccessfully pursued administrative and state-court appeals, following which he filed this case. Plaintiff's third amended complaint enumerates twelve claims for relief. Plaintiff's claims numbered two, four, six, seven, eight, nine, and eleven alleged violations of his 14th Amendment right to due process in connection with the

---

[1]Plaintiff is currently incarcerated in the State of Virginia, pursuant to a transfer under the Interstate Corrections Compact. Docs. 41, 42.

disciplinary proceedings. By Order entered August 8, 2011, the Court dismissed Plaintiff's 14th Amendment Claims, including all claims against Defendant Nichols, and claims against Defendant Hosford were dismissed for failure to exhaust. Docs. 61, 65.

Plaintiff's claims numbered one, three, five, ten, and twelve allege violations of Plaintiff's First Amendment rights. In Claim One, Plaintiff alleges that Gionet's "false" DR was made in retaliation for Plaintiff's filing of a grievance concerning the law library. The Court dismissed Plaintiff's retaliation claim against Gionet pursuant to *O'Bryant v. Finch*, 637 F.3d 1207 (11th Cir. 2011). *Id*.

Defendants first motion to dismiss did not address Plaintiff's First Amendment claims against Defendants Capers, Andrews, and Vargas, in Plaintiff's claims enumerated three, five, and ten. *See* Doc. 20, 61. In Claims Three and Five, Plaintiff alleges that Capers and Andrews expressed retaliatory intent during the disciplinary proceeding, and thereby violated his First Amendment rights. In Claim Ten, Plaintiff alleges that Defendants violated his First Amendment rights by punishing him for the protected statement that he had "contacts on the outside who relay my complaints about you and this library to the Department of Corrections General Counsel's office and Secretary's office."

## II. DEFENDANTS' SECOND MOTION TO DISMISS

Defendants contend that all of Plaintiff's remaining retaliation claims are due to be dismissed pursuant to *O'Bryant*. Defendants argue that although *O'Bryant* held that an inmate cannot state a claim for retaliation against the reporting prison employee (here, Defendant Gionet), when the inmate has received due process and there is some evidence that the inmate committed the underlying offense, the rationale of

*O'Bryant* should apply with equal force to other members of the disciplinary team. Defendants also contend that dismissal is warranted pursuant to *O'Bryant* because Defendants would have imposed the same disciplinary sanctions upon Plaintiff because of his spoken threats to Gionet, even absent Plaintiff's protected activity (filing grievances against Gionet). Defendants maintain that Plaintiff's statement to Gionet was a violation of prison rules against making threatening statements. Doc. 68.

In opposition, Plaintiff maintains that his case is distinguishable from *O'Bryant* because the alleged statement he made to Gionet is itself protected speech under the First Amendment. Plaintiff maintains that this Court must explore his "actual innocence" of the disciplinary violation, and Defendants' alleged bad faith and collusion in suppressing evidence of his innocence. To the extent that Plaintiff makes other arguments pertaining to issues decided previously, such as exhaustion of administrative and state remedies and due process, the Court has denied reconsideration of its Order granting Defendants' first motion to dismiss, and such arguments will not be revisited. *See* Doc. 73.

### III. STANDARD OF REVIEW

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate." *Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv.*, 400 F.2d 465, 471 (5th Cir. 1968). For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *See, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir.1994).

Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits. Fed R. Civ. P. 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993).

In *Ashcroft v. Iqbal*, . ___U.S. ___, 129 S.Ct. 1937, 1950 (2009), the Supreme Court articulated a two-pronged approach for evaluating a motion to dismiss under Rule 12(b)(6): The court must first determine what factual allegations in the complaint are entitled to a presumption of veracity, and then assess whether these facts give rise to an entitlement for relief. In determining whether factual allegations are entitled to the presumption of truth, the Court stated that it was not whether the facts are "unrealistic or nonsensical" or even "extravagantly fanciful," but rather it is their conclusory nature that "disentitles them to the presumption of truth." *Iqbal*, 129 S.Ct. at 1951. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007). "While the pleadings of *pro se* litigants are 'liberally construed,' they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. Saint Lucie County School Bd.,* 2010 WL 3995824, **1 (11th Cir. 2010) (unpublished) (citations omitted) (applying pleading standards of *Iqbal* and *Twombly* to *pro se* complaint).[2]

## IV. DISCUSSION

### (1) Remaining Retaliation Claims

Plaintiff alleges in Claims Three and Five that the disciplinary report was

---

[2]Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

*Case No: 4:09-cv-00026-SPM -GRJ*

motivated by retaliation for filing grievances, and that the remaining Defendants expressed such retaliation during the course of the disciplinary proceeding. This Court previously concluded that Plaintiff's identical retaliation claim against Gionet was precluded by *O'Bryant v. Finch*.[3]  Doc. 65.  The Court explained:

> [*O'Bryant*] held that "[i]f a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report." *O'Bryant*, 637 F.3d at 1215. "To find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction after having filed a grievance." *Id*. at 1216. Ultimately, the Eleventh Circuit determined that because the prisoner in *O'Bryant* was guilty of the disciplinary infraction, his claim for retaliation failed.
>
>        Plaintiff's complaint does not establish that he was denied due process at his disciplinary hearing, and there was evidence to support his conviction. Moreover, the Leon County Circuit Court, in denying Plaintiff's petition for writ of mandamus, previously determined that Plaintiff's disciplinary conviction satisfies procedural due process and was supported by some evidence, and this Court is in agreement with the Magistrate Judge that Plaintiff cannot state a cognizable claim for due process violations. As in *O'Bryant*, were Plaintiff's claim against Gionet allowed to proceed, it would only frustrate the finality of institutional discipline procedures.

There is nothing in *O'Bryant* that suggests that its reasoning should not apply with equal force with respect to retaliation claims against other members of the disciplinary team, as well as the employee who makes the initial disciplinary report. As in the case of *O'Bryant* and the claims against Gionet, if Plaintiff's retaliation claims against other members of the disciplinary team, which stem from the same event, were allowed to proceed, it would only frustrate the finality of institutional disciplinary

---

   [3]*O'Bryant* was decided after the undersigned recommended that Defendants' motion to dismiss be denied with respect to the retaliation claims.

procedures. Accordingly, the undersigned concludes that the retaliation claims against the remaining Defendants should be dismissed pursuant to *O'Bryant.*

**(2) Whether Plaintiff's Statement to Gionet was Protected Speech**

Plaintiff maintains that even if he made the statement that Gionet accused him of making, such statement was protected speech. "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Smith v. Mosley* 532 F.3d 1270, 1276 (11th Cir. 2008) (citing *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir.2003)). "It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints." *Id*. "To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Id*. (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir.2005)).

The Court concludes that in the context in which the statement to Gionet was made, it was not protected by the First Amendment. As the record of Plaintiff's disciplinary proceeding reflects, Plaintiff approached Gionet and suggested that she put pressure on the warden to obtain certain software. Gionet told Plaintiff to use the proper channels to request the software. Instead of following Gionet's directive, Plaintiff pursued the matter by telling Gionet that he had "contacts on the outside who relay my complaints about you and this library to the Department of Corrections General

Counsel's office and the Secretary's office."  While Plaintiff may have had the right to make complaints about the conditions of his confinement, his did not have the right to argue with Gionet after receiving a direct instruction regarding his request for software. In such an argumentative context, Plaintiff's statement could reasonably be viewed as a threat intended to coerce Gionet's compliance with his request.  Such argumentative, coercive, and insubordinate statements, in the prison context, fall outside the scope of the First Amendment's protection.  See, e.g., Robinson v. Boyd  276 Fed. Appx. 909, 910, 2008 WL 1838656, *1 (11th Cir. 2008) (inmate who asked officer about wearing warm clothing did not have a First Amendment right to argue with the officer after being given direct instruction that the clothing was not permitted.); Smith, 532 F.3d at 1277 (prisoner's "false and insubordinate remarks" not protected speech); Lockett v. Suardini, 526 F.3d 866, 874 (6th Cir.2008) (prisoner's act of using epithet against hearing officer not protected speech); Garrido v. Coughlin, 716 F.Supp. 98, 99-101 (S.D.N.Y.1989) ("verbal confrontation" with officers not protected speech); Riggs v. Miller, 480 F.Supp. 799, 804 (E.D. Va.1979) ("bickering, argumentative conversation" not "constitutionally protected speech"); Durkin v. Taylor, 444 F.Supp. 879, 881-83 (E.D.Va.1977) (statement that "I am tired of chickenshit rules" not protected speech).

Accordingly, Plaintiff's claim that he was subjected to disciplinary sanction in violation of his First Amendment rights is due to be dismissed.

## VI.  CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' second motion to dismiss (Doc. 68) be **GRANTED,** and that this case be  **DISMISSED**

and judgment entered in Defendants' favor.

**IN CHAMBERS** this 3rd day of February 2012.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


### NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**